IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Randy T. Green, <br>       Plaintiff <br> v. <br> <br> The Village of South Holland, Officer Chad Barden (Star #121), along with Other Unknown/Unidentified Officers or Officials, Individually, and as agents of South Holland, <br> <br>       Defendants. | <br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff, RANDY T. GREEN (Randy Green), by his attorney, AMR Law Group, LLC, and complaining of Defendants, the VILLAGE OF SOUTH HOLLAND, the Village of South Holland Police Officer CHAD BARDEN, and OTHER UNKNOWN/UNIDENTIFIED OFFICERS OR OFFICIALS of the Village of South Holland.

### Introduction

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution, among other claims.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367, and venue is proper under U.S.C. §1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this judicial district.

1

## The Parties

3.  Plaintiff, Randy Green, resides in South Holland, Cook County, Illinois.

4.  Defendant Officer Chad Barden (#121), sued herein in his individual and official capacity, is a police officer employed at all relevant times by the Village of South Holland, Illinois. At all times relevant hereto, Defendant Chad Barden was acting under color of law and/or within the scope of his employment as a police officer for the Village of South Holland.

5.  Other unknown/unidentified Officers of the Village of South Holland Police Department or Officers of the Village of South Holland are sued herein in their individual and official capacities as employed by and/or acting at all relevant times for the Village of South Holland. At all relevant times these officers or officials were acting under color of law and/or within the scope of their employment as officers or officials for the Village of South Holland.

6.  Defendant Village of South Holland is a municipal corporation located in Cook Count and incorporated under the laws of the state of Illinois that operates the South Holland Police Department, and, at all times relevant to the events complained of herein, was the employer of Defendant Chad Barden (#121) and the other unknown/unidentified Officers of the Village of South Holland Police Department or Officers of the Village of South Holland. The Village of South Holland is sued pursuant to the doctrine of respondeat superior on the pendant state law claims.

## Background

7.  On Sunday, July 22, 2012, two South Holland Police Officers arrived in separate vehicles at the home of Randy Green between 9-10 am, to investigate a purported dog off-leash (at large).

8.  Upon information and belief, a caller had identified the dog at large as "a big old

gray dog runnin' around." The caller made no mention of the dog being dangerous, vicious, or aggressive.

9. Upon information and belief, the information conveyed by a dispatcher to one or more South Holland Officers was the report of a "large gray dog" at large.

10. The two South Holland Officers arrived while Plaintiff Randy Green and his family were asleep inside of their home, and where Mr. Green's Cane Corso dog, Grady, was sitting on the front porch.

11. Upon information and belief, the chain holding Grady in the Green family backyard had popped allowing Grady to be off leash on and around Mr. Green's residence.

12. Both South Holland Officers were equipped with dog catching poles in the trunks of their vehicles, but neither attempted to use the dog catching poles to capture the purported dog at large.

13. South Holland Officer Chad Barden stood, with his gun drawn, near the Green family home while the dog Grady sat on the front porch.

14. The accompanying South Holland Officer stood, leaning against his own police vehicle, approximately 100 feet away from Officer Chad Barden.

15. The dog Grady walked past both Officers on more than one occasion without incident, thereafter lazily returning to the front porch of the Green residence.

16. At no time did the dog Grady make physical contact with either Officer.

17. The South Holland Police Officers stood outside of the Green family home for approximately twenty minutes.

18. At this time, the dog Grady approached Officer Barden again as he was standing nearest the Green family home.

3

19. Shortly thereafter, Officer Barden shot the dog Grady <u>three</u> times for no reason.

20. Two neighbors witnessed the interactions between Grady and Officer Barden. Both saw no reason for either South Holland Officer to have shot Grady.

21. Just prior to the shooting, Randy Green's wife answered a phone call from a dispatcher alerting her to the fact that Grady was off-leash and that South Holland Police were present. She begged the dispatcher not to let the Officers shoot Grady and immediately woke Randy.

22. Prior to being shot by Officer Barden, the dog Grady had not aggressively bitten, attacked, endangered, or inflicted severe injury on a human being on public or private property.

23. Prior to being shot by Officer Barden, the dog Grady had not chased or approached any person upon the street, sidewalks, or any public grounds in a menacing or apparent attitude of attack.

24. The dog Grady has no history of aggression, attacks or bites.

25. The dog Grady had prior positive interactions with children.

26. The dog Grady had passed the Mr. K-9 dog training classes at Loubell's Kennels in South Holland.

27. The dog Grady is (and was) not a "dangerous dog" pursuant to the Village of South Holland's Ordinance No. 2003-28, Article II, Section 5-32, on that day or any other.

28. Video Surveillance footage from the Green family residence revealed the absence of any charging, lunging or showing of teeth by the dog Grady and instead showed the dog Grady seeking "greater distance between the officer and himself," displaying "calming [body] signals" by "looking away from the officers and showing his [Grady's] flank," and moving in a "trot." See, 10.09.12 Expert Report, attached as <u>Exhibit 1</u>.

4

29. After being shot, Grady ran to the back of the Green family home.

30. Randy Green rushed outside to help his injured dog.

31. While Randy Green was loading the badly injured dog into his vehicle, Randy Green was approached by a different South Holland Police Officer, who gave Randy Green a number to call.

32. Immediately thereafter, Randy and his wife took Grady to an emergency veterinary facility where Grady was treated. See, Veterinary Receipts, attached as Exhibit 2.

33. Shortly after Randy Green and his wife left, South Holland Police Officers walked onto the residential property of Randy Green, including his backyard and other private areas near his home.

### Count I – 42 U.S.C. Sec. 1983: Fourth Amendment Violation
### (Against Officer Barden and Other Unknown Police Officers)

34. Each of the preceding Paragraphs is incorporated as if fully set forth herein.

35. As described in the preceding paragraphs, the conduct of the South Holland Police Officers, and in particular Officer Barden, acting under color of law, by shooting Randy Green's dog and thereafter entering onto the curtilage of Mr. Green's home, constituted a search and seizure in violation of the United States Constitution.

36. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's Constitutional rights.

37. The misconduct described in this Count was undertaken with malice, willfulness and/or reckless indifference to the rights of others.

38. The misconduct described in this Count was further undertaken with deliberate disregard for South Holland Ordinances and/or other relevant Animal Control Policies, and with a deliberate indifference and in bad faith to the rights of citizens and with a callous disregard for

5

Plaintiff's rights.

39. As a result of the Defendant Officers' illegal seizure, Plaintiff suffered injury, including emotional anguish, pain, suffering, and expenses including emergency veterinary care for his dog Grady.

WHEREFORE, Plaintiff RANDY GREEN respectfully requests that the Court enter judgment in his favor and against Officer Barden and other unknown/unidentified members of the South Holland police, in their individual and official capacities, for damages in an amount deemed just, including attorneys fees, costs, and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

### Count II – 42 U.S.C. Sec. 1983: Fourth Amendment Violation – Monell Claims
### (Against the Village of South Holland)

40. Each of the preceding Paragraphs is incorporated as if fully set forth herein.

41. As described in the preceding paragraphs, the conduct of South Holland Officers and in particular Officer Barden, acting under color of law, by shooting Plaintiff's dog and thereafter entering onto the curtilage of Plaintiff's home, constituted a search and seizure in violation of the United States Constitution.

42. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's Constitutional rights.

43. The misconduct described in this Count was objectively unreasonable and was undertaken with malice, willfulness and reckless indifference to the rights of others.

44. The misconduct descried in this Count was undertaken pursuant to a policy and practice of the Village of South Holland in that:

    a. As a matter of both policy and practice, the Village of South Holland directly encourages, and is thereby the moving force behind, the very type of misconduct at issue

6

here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

   b. Defendant the Village of South Holland is charged with duties including the promulgation and adoption of rules and regulations and general and special orders for the governance of the Village of South Holland Police and including the policies, procedures and practices described therein;

   c. Upon information and belief, Defendant the Village of South Holland employs a policy maker for the Village of South Holland and office of the Village of South Holland Police Department in connection with the training and supervision of police officers regarding the use of force, which was excessive in this case;

   d. At all times relevant to this Complaint, the Police Officers noted herein were acting under the direction and control of the policy maker for the Village of South Holland;

   e. At all times relevant to this Complaint, and acting under color of law and pursuant to his/her policy-making authority for the Defendant Village of South Holland, the Village Official charged with policy making knowingly, recklessly, maliciously, or with a deliberate indifference and in bad faith to the rights of citizens and a callous disregard of Plaintiff's rights, failed to instruct, train, supervise, control and discipline on a continuing basis, Defendant Police Officers in their duties to refrain from the acts alleged in this Complaint;

   f. The serious harm that occurred to Plaintiff was the obvious consequence of the official policy or custom of the Defendant the Village of South Holland in connection with their deliberately indifferent failure to train and supervise the Defendant Police Officer(s); and

   g. As a direct and proximate cause of the above acts of Defendant the Village of South Holland, Plaintiff suffered damages in connection with the deprivation of his

7

constitutional and statutory rights guaranteed to him by the Fourth Amendment to the Constitution of the United States and protected by 42 U.S.C. Sec. 1983.

45. The misconduct described in this Count was specifically investigated by and found to be in compliance with the department's policies and procedures by Defendant Village of South Holland.

46. As a result of the Defendant Officers, and other unknown/unidentified Village of South Holland Officers' unjust seizure and search, Plaintiff has suffered injury, as well as emotional distress.

WHEREFORE, Plaintiff RANDY GREEN respectfully requests that the Court enter judgment in his favor and against Officer Barden and other unknown/unidentified members of the South Holland police, in their individual and official capacities, for damages in an amount deemed just, including attorneys fees, costs, and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

### Count III – Trespass to Real and Personal Property (Conversion) - State Law Claim
### (Against All Defendants and other Unknown/Unidentified Officers)

47. Each of the preceding Paragraphs is incorporated as if fully set forth herein.

48. As described in the preceding paragraphs, the Defendant Officer Barden shot Randy Green's dog causing serious injury.

49. As described in the preceding paragraphs, the Defendant Officer Barden and/or other unknown/unidentified officers, without permission, entered onto Plaintiff's property, including the back yard and other private areas in the curtilage of Plaintiff's home.

50. The actions of Defendants, stated above, constituted an intentional and reckless unlawful interference with the personal property of Plaintiff without lawful authority to do so.

51. The actions of the South Holland Police Officers, stated above, constituted an

8

intentional and reckless entry on the land of Plaintiff without lawful authority to enter.

52.　As a result of the trespass to real and personal property, Plaintiff suffered damages caused by the Defendant Village of South Holland.

WHEREFORE, Plaintiff RANDY GREEN respectfully requests that the Court enter judgment in his favor and against Officer Barden and other unknown/unidentified members of the South Holland police, in their individual and official capacities, for damages, including punitive damages where applicable by law, and for any other relief this Court deems just and appropriate under the circumstances.

### Count IV – Intentional Infliction of Emotional Distress - State Law Claim
### (Against Defendant Barden)

53.　Each of the preceding Paragraphs is incorporated as if fully set forth herein.

54.　The Defendant engaged in conduct resulting in the intentional infliction of emotional distress, including (1) extreme and outrageous conduct, (2) intent to inflict severe emotional distress or knowledge that there was a high probability that the conduct would do so, and (3) the conduct actually caused severe emotional distress.

55.　As an officer of the law, Officer Barden was in a position of authority over Plaintiff.

56.　Officer Barden knew or had reason to believe that the large grey dog sitting on the front porch of the Green residence belonged to someone at that home.

57.　Officer Barden knew or had reason to believe that there was a high probability that shooting the large grey dog would cause severe emotional distress to the owner of the large grey dog.

58.　As a direct and proximate cause of the actions of Officer Barden, Plaintiff suffered severe emotional distress, among other injuries.

WHEREFORE, Plaintiff RANDY GREEN respectfully requests that the Court enter judgment in his favor and against Officer Barden for damages, including punitive damages where applicable by law, and for any other relief this Court deems just and appropriate under the circumstances.

### Count V – Illinois Humane Care for Animals Act - State Law Claim
### (Against Defendant Officer Barden)

59. Each of the preceding Paragraphs is incorporated as if fully set forth herein.

60. The actions of the Defendant Officer Barden – by having shot Grady – were in violation of Illinois' Humane Care for Animals Act, 510 ILCS 70/16.3

61. Section 16.3 states as follows:

> 510 ILCS 70/16.3. Civil actions. Any person who has a right of ownership in an animal that is subjected to an act of aggravated cruelty under Section 3.02 or torture under Section 3.03 in violation of this Act or in an animal that is injured or killed as a result of actions taken by a person who acts in bad faith under subsection (b) of Section 3.06 or under Section 12 of this Act may bring a civil action to recover the damages sustained by that owner. Damages may include, but are not limited to, the monetary value of the animal, veterinary expenses incurred on behalf of the animal, any other expenses incurred by the owner in rectifying the effects of the cruelty, pain, and suffering of the animal, and emotional distress suffered by the owner. In addition to damages that may be proven, the owner is also entitled to punitive or exemplary damages of not less than $500 but not more than $25,000 for each act of abuse or neglect to which the animal was subjected. In addition, the court must award reasonable attorney's fees and costs actually incurred by the owner in the prosecution of any action under this Section.
>
> The remedies provided in this Section are in addition to any other remedies allowed by law.
>
> In an action under this Section, the court may enter any injunctive orders reasonably necessary to protect animals from any further acts of abuse, neglect, or harassment by a defendant.
>
> The statute of limitations for cruelty to animals is 2 years.
> (Source: P.A. 92454, eff. 1102.)

62. The Illinois' Humane Care for Animals Act defines aggravated cruelty in Section 3.02 as follows:

> 510 ILCS 70/3.02. Aggravated cruelty.
> No person may intentionally commit an act that causes a companion animal to suffer serious injury or death. Aggravated cruelty does not include euthanasia of a companion animal through recognized methods approved by the Department of Agriculture.
>
> A person convicted of violating Section 3.02 is guilty of a Class 4 felony. A second or subsequent violation is a Class 3 felony. In addition to any other penalty provided by law, upon conviction for violating this Section, the court may order the convicted person to undergo a psychological or psychiatric evaluation and to undergo any treatment at the convicted person's expense that the court determines to be appropriate after due consideration of the evaluation. If the convicted person is a juvenile or a companion animal hoarder, the court must order the convicted person to undergo a psychological or psychiatric evaluation and to undergo treatment that the court determines to be appropriate after due consideration of the evaluation.
> (Source: P.A. 92650, eff. 71102.)

63. The actions of the Defendant Officer Barden caused Grady to suffer serious injury and therefore amounted to aggravated cruelty in violation of Illinois' Humane Care for Animals Act, 510 ILCS 70/3.02.

64. Officer Barden's shooting Grady *three* times served only to inflict excessive pain on the dog Grady.

65. Officer Barden was aware that Grady was still alive after Officer Barden shot Grady *three* times.

66. Officer Barden observed Grady run away from the Officer after Officer Barden shot Grady.

67. Officer Barden knew or had reason to believe that a dog would suffer pain after being shot multiple times.

68. Officer Barden did not attempt to capture the injured dog and did not escort Grady to an emergency veterinarian after Officer Barden shot Grady.

69. Officer Barden took no steps to alleviate Grady's pain following the time Officer Barden shot Grady.

70. Officer Barden's actions were not reasonable in light of the circumstances.

WHEREFORE, Plaintiff, RANDY GREEN, respectfully requests that this Court enter judgment in his favor and against Defendant Barden, in his official and individual capacity, for veterinary expenses incurred on behalf of Grady, any other expenses incurred by Plaintiff in rectifying the effects of the cruelty, pain, and suffering of Grady, and emotional distress suffered by Plaintiff. Plaintiff further requests additional relief in the form of punitive or exemplary damages of $100,000 for each of the four acts of abuse or neglect to which the Grady was subjected as a result of 1) Officer Barden's shooting Grady *three* times and 2) Officer Barden's failure to procure immediate emergency care for Grady, in addition to reasonable attorney's fees and costs, for her damages in this case and any for any other relief this Court deems just and appropriate under the circumstances.

### Count VI – Malicious Prosecution - State Law Claim
### (Against All Defendants)

71. Each of the preceding Paragraphs is incorporated as if fully set forth herein.

72. Over a month after the shooting, on or about August 29, 2012, Officers from the South Holland Police Department dropped off a letter at Plaintiff's home, which letter stated that Plaintiff's "Cane Corso has been declared a dangerous dog pursuant to the Village of South Holland's Ordinance No. 2003-28, Article II, Section 5-32." See Exhibit 3, attached herein. This letter was dated July 25, 2012 and further states that Plaintiff may file a written request for a hearing to contest the declaration by no later than August 4, 2012 and if not filed, must comply

as of August 11, 2012. Both dates had passed prior to the date Plaintiff received the letter, over a month after its purported date.

73. On September 1, 2012, Plaintiff sent a written request to the Village Administrator asking for a hearing on the matter and stating that he did not intend to waive his request to a hearing on the declaration. Copies were also sent to the South Holland Police via facsimile. See, Group Exhibit 4, attached herein.

74. On September 14, 2012, the Attorney representing the Village of South Holland, Mr. Tim Lapp, from the law firm of Hiskes, Dillner, O'Donnell, Marovich & Lapp, Ltd., relayed that the Village would allow Mr. Green a hearing.

75. On October 10, 2012, a hearing was conducted before Hearing Officer Angelo J. Vitiritti wherein Mr. Green provided written and video evidence that contradicted the testimony of the Village Police Officers, as well as the analysis of the surveillance footage by an expert dog trainer who concluded that the dog did not act in an aggressive manner throughout the encounter, and further presented two witnesses to the events who testified there was no apparent reason for the officer to have shot Grady.

76. Mr. Lapp did not attend the October 10, 2012 hearing. Instead, witnesses' and evidence for the Village were introduced by Hearing Officer Vitiritti.

77. During the October 10, 2012 hearing, when Mr. Green requested the written evidence asserted by the Village, Mr. Green was denied copies by Hearing Officer Vitiritti.

78. The accompanying Officer indicated that Officer Barden had been investigated, but cleared of internal review by the South Holland Police Department because the dog had been declared "dangerous."

79. The shooting Officer Barden's testimony was inconsistent with the surveillance

footage.

80. The shooting Officer Barden further failed to credibly explain why – in the approx. twenty (20) minutes the officers stood outside of Mr. Green's home - neither he nor the accompanying Officer obtained the dog catching poles that were in the trunks of each of their squad cars.

81. Upon information and belief, at the time the Officers testified, they were unaware that Mr. Green had surveillance footage showing the actions of Grady to be neither aggressive/menacing nor attacking.

82. Plaintiff was not made aware prior to the October 10, 2012 hearing and only later realized that the Village Hearing Officer, Mr. Angelo J. Vitiritti, is an attorney employed by the firm of Hiskes, Dillner, O'Donnell, Marovich & Lapp, Ltd. - the same firm that previously represented the Village on this same matter.

83. On October 16, 2012, the Village of South Holland issued a final determination that Mr. Green's dog had been deemed dangerous pursuant to Village Ordinance. See, Exhibit 5, attached herein.

84. Mr. Green appealed the October 16, 2012 determination, which determination was reversed following extensive briefing by the parties and a hearing before the Court on May 8, 2013. See, Court Orders attached as Group Exhibit 6.

85. Upon information and belief, the Village of South Holland sought prosecution of Randy Green pursuant to Ordinance No. 2003-28, Article II, Section 5-32, to cover for the wrongful acts of South Holland Police Officers, to create undue expense to Randy Green, and to intimidate Randy Green in an attempt to prevent him from seeking redress for the wrongful acts of the South Holland Police Officers.

86. Defendants sought to prosecute Randy Green pursuant to South Holland Ordinance No. 2003-28, Article II, Section 5-32 with malicious intent and lack of probable cause.

87. Further to this, the Village of South Holland denied Randy Green due process and a fair administrative hearing by employing the same law firm to represent the Village and to serve as Hearing Officer in Randy Green's case.

88. The Village of South Holland's action against Randy Green pursuant to South Holland Ordinance No. 2003-28, Article II, Section 5-32 terminated in his favor on May 8, 2013.

89. By the actions detailed above, the Defendant Officer sought to and in fact did maliciously prosecute Plaintiff Randy Green on false charges for which they knew there was no probable cause.

90. As a direct and proximate result of this malicious prosecution, Plaintiff Randy Green experienced injuries and damages beyond the usual expense, time, or annoyance in defending lawsuit, including but not limited to the emotional distress and injury to reputation incurred by the actions of Defendants.

WHEREFORE, Plaintiff RANDY GREEN respectfully requests that the Court enter judgment in his favor and against Defendants for damages, including punitive damages where applicable by law, and for any other relief this Court deems just and appropriate under the circumstances.

## Count VII – Respondeat Superior
### (Against the Village of South Holland)

90. Each of the preceding Paragraphs is incorporated as if fully set forth herein.

91. In committing the acts alleged in the preceding paragraphs, Defendants were members of, and agents of, the Village of South Holland, acting at all relevant times within the

15

scope of their employment.

92. Defendant the Village of South Holland is liable as principal for all torts committed by its agents.

WHEREFORE, Plaintiff RANDY GREEN respectfully requests that the Court enter judgment in its favor and against Defendant the Village of South Holland in the amounts awarded to Plaintiff, excepting these damages specifically excluded for a municipality for which Plaintiff thereby seeks from the individual officer(s), and against Defendant Officer Barden and/or any other unknown/unidentified Village of South Holland Officers, and for each of them:

    a. An amount reasonably calculated to compensate Plaintiff for the shooting of his dog, Grady;

    b. An amount reasonably calculated to compensate Plaintiff for his emotional distress and loss of enjoyment of life;

    c. Punitive damages against any member of the Village of South Holland Officers acting in their individual capacity, in an amount to be determined by the trier of fact, for his/her intentional, outrageous, reckless and wanton and willful acts herein;

    d. Punitive damages against Village of South Holland Officer Barden acting in his individual capacity, in an amount to be determined by the trier of fact, for his/her intentional, outrageous, reckless and wanton and willful acts herein;

    e. The costs of this action, including attorney fees (where applicable) and expert fees as the court may deem just and equitable in this case;

    f. Interest on any amounts recovered, as provided by law; and

    g. Such further and other relief as the court deems just and appropriate under the circumstances.

## JURY DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 24, 2013                         Respectfully submitted,


                                             /s/ Anna Morrison-Ricordati
                                             Counsel for Randy Green

Anna Morrison-Ricordati
AMR Law Group, LLC
111 W. Washington St., Suite 1760
Chicago, Illinois 60602
anna@amrlawgroup.com
(312) 376-7660 Phone; (888) 376-7660 Fax